IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| J.A., b/n/f/ Alfredo Alvarez<br>      Plaintiffs, | §<br>§<br>§<br>§ | |
| v. | § | CIVIL ACTION NO.   2:17-cv-182 |
| | § | |
| **CORPUS CHRISTI INDEPENDENT**<br>**SCHOOL DISTRICT,**<br>      Defendant | §<br>§<br>§<br>§ | |

### FIRST ORIGINAL COMPLAINT

**NOW COMES** J.A. ("the Student") by and through his next friend and natural father, Alfredo Alvarez, (collectively termed "the Plaintiffs" herein) and files this their *First Original Complaint* alleging that the Corpus Christi Independent School District (hereinafter after referred to as "CCISD" or the "School District"), violated the various rights of J.A., as more specifically pled herein. Plaintiffs reserve the right to replead if new claims and issues arise upon further development of the facts, as permitted by law. In support thereof Plaintiffs would respectfully show this tribunal the following:

### I. BRIEF INTRODUCTION TO THE CASE

1. J.A. is now sixteen (16) years old. He is currently enrolled in the tenth grade at CCISD Richard King High School. He qualifies as a student with Learning Disability[1]. He has also been diagnosed with ADHD[2] and Fetal Alcohol Syndrome[3] ("FAS").

2. Over the course of several years J.A. has been bullied, harassed and even sexually assaulted by the same male student on numerous occasions. Despite the fact that both

---

[1]     Pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §1401 *et seq*.

[2]     Attention-deficit/hyperactivity disorder (ADHD) is a brain disorder marked by an ongoing pattern of inattention and/or hyperactivity-impulsivity that interferes with functioning or development.

[3]     Fetal Alcohol Syndrome (FAS) is a congenital syndrome caused by excessive consumption of alcohol by the mother during pregnancy, characterized by retardation of mental development and of physical growth, particularly of the skull and face of the infant.

J.A. and his father, Alfredo Alvarez, have met with the school officials and spoken about the assaults and bullying he was experiencing no interventions were ever undertaken to ensure J.A.'s safety.

3. Due to his fear of attending school, J.A. significantly regressed. The situation at King High deteriorated to the point that J.A.'s father finally transferred him to another school using the district's "Safety Transfer" policy.

4. Mr. Alvarez feels compelled to tell their story in hopes that it will help other families who have experienced similar situations, as well as having a healing effect for both himself and J.A.

5. As such, and as will be fully described below, Plaintiffs now bring forth claims pursuant to Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 USC 794, the Americans with Disabilities Act ("ADA"), 4q2 U.S.C. 12131 et seq, Title IX of the Education Acts of 1972 ("Title IX"), and 20 USC 1681 et seq.

## II. JURISDICTION

6. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and 1343 because the matters in controversy arise under the Constitution and the laws of the United States.

7. This Court also has jurisdiction pursuant to award attorney's fees and costs to the Plaintiff under also pursuant to 42 U.S.C. § 2000d et seq. and 42 U.S.C. §1988.

## III. VENUE

8. Under 28 U.S.C. §1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiff's claims occurred in the Southern District of Texas, Corpus Christi Division.

## IV. PARTIES

9. J.A. lives with his father Alfredo Alvarez, and his younger brother at 5309 Navarro Street, Corpus Christi, Texas, 78415. They live within the CCISD catchment area. Alfredo Alvarez has had sole custody of J.A. and his brother since a December 2004 divorce agreement with his ex-spouse D.E.

10. The CCISD is a school district organized under the laws of the State of Texas. At all times pertinent to this case, J.A. was a student at the CCISD. They may be served by and through their Superintendent, the Honorable Dr. Roland Hernandez, PhD. at 801 Leopard Street, Corpus Christi, Texas, 78403.

## V. CONDITIONS PRECEDENT AND ADMINISTRATIVE EXHAUSTION

11. Plaintiffs have exhausted their special education related claims pursuant to the Individuals With Disabilities Education Act, ("IDEA"), 20 U.S.C. § 1415(1) and 19 T.A.C. § 89.1185(p) and as such all conditions precedent to the filing of this lawsuit have been fulfilled.

## VI. STATEMENT OF FACTS

12. J.A. is now sixteen (16) years old. During the time period for the basis of this complaint he was a student enrolled in Southpark Middle School and later at Carroll High School, CCISD.

13. In 2013, while attending Southpark Middle School, J.A. was sexually assaulted by a male student, R.

14. Alfredo Alvarez was informed of the incident when a special education teacher from the school called him. Over the phone, she informed Alfredo Alvarez that J.A. was found in the restroom crying. When asked why he was crying J.A. informed her that R. grabbed him, pulled his pants down, and began acting like he was humping him.

15. Shortly after the assault, Vice Principal Crabtree met with Alfredo Alvarez. He assured Alfredo Alvarez that steps would be taken to ensure J.A.'s safety while at school. He informed Mr. Alvarez that R. would not be allowed near J.A. However, no safety plan was ever devised and no changes were ever added to J.A.'s Individual Education Plan ("IEP")[4].

16. In fact, the school failed to even conduct an ARD[5] Committee meeting to consider changes to be implemented that would ensure J.A.'s safety.

17. At any given time during the preceding semesters, the School District failed to address J.A.'s unique and individualized needs. First, he was never provided a psychological assessment, school-based counseling services, an aide or shadow to observe him at the school, social skills, training or any information about his rights as a student with a disability or his rights to file a complaint about the bullying, harassment and sexual assaults he experienced.

18. Moreover, the School District failed to implement appropriate safety measures to prevent future bullying and otherwise provide a safe environment for him. This discrimination based on his gender stands in direct contrast to his constitutional rights and statutory rights.

19. The school failed to address the impact of the harassment on J.A. and never provided him any services related to bullying, harassment or sexual assault he experienced, whether it be pursuant to Title IX, Section 504 or both.

20. Nor was Alfredo Alvarez ever given notice of J.A.'s rights under Title IX.

21. The District failed to investigate any complaints under Title IX standards.

---

[4] Individualized Education Program; *see* 20 U.S.C. § 1414(d); 34 C.F.R. § 300.320.

[5] Admission Review Dismissal ("ARD"); *see* 20 USC § 1401(11); 34 C.F.R. § 300.320(a)(4)

22. The District failed to provide an ongoing analysis as to the effectiveness of any interventions they may have provided.

23. They never provided information about his right to file a formal grievance with the School District.

24. They never provided the family information about their right to file a formal complaint with the Office of Civil Rights.

25. They did not provide the family information about who the Title IX Coordinator was for the District until August 19, 2016, almost one full year after the *second* sexual assault upon J.A. detailed below.

26. Due to the ongoing failure of the School District to control the harassment he experienced, and the failure to investigate the issues correctly, not surprisingly, J.A. suffered further indignities, harm and sexual assault while at school.

27. On or around September 10, 2015, while J.A. was a student at Carroll High School, Alfredo Alvarez noticed a bruise on J.A. His father asked J.A. if he was being bullied at school. Unfortunately, J.A. refused to talk to his father about the bruise. Alfredo Alvarez was upset that his son wouldn't talk to him but he was not surprised. Alfredo Alvarez explained that ever since the first time J.A. was sexually assaulted that he had become withdrawn and was afraid to tell him of any bullying or harassment incidents.

28. However, J.A. did talk to Alfredo Alvarez's sister, Angie. J.A. told Angie that he was being bullied at school but did not elaborate.

29. One week later on or around September 17, 2015, J.A. was sexually assaulted again by the same student who had assaulted him two years earlier, R.

30. On that day Alfredo Alvarez had taken J.A. to the doctor for an unrelated scheduled doctor's appointment. While at the doctor's office J.A. informed Alfredo Alvarez that he

was sexually assaulted by R. in the restroom. He informed Alfredo Alvarez that R. pushed him into a stall and started kissing his penis.

31. Immediately after the doctor's appointment, Alfredo Alvarez called the school to report what J.A. had told him. No one at the school answered so he left a message requesting his call be returned.

32. The next day on or around September 18, 2015, Alfredo Alvarez called the school again at approximately 9:00 a.m. and requested to speak to the principal. He was informed that she was not available. Alfredo Alvarez again called the school again around 11:30 a.m. and was, again, informed that she was not available. Finally, around 2:30 p.m. Alfredo Alvarez received a return call from Vice Principal Daniel. She informed him that she was waiting for J.A. to return to school so that she could talk to him about the incident. Alfredo Alvarez informed her that J.A. was not at school today because the doctor had adjusted his medication and felt that he needed to stay home for the day.

33. The following Monday on September 21, 2015, Alfredo Alvarez took J.A. to school. Upon arrival Alfredo Alvarez and J.A. met with Vice Principal Daniel. During this time, Vice Principal Daniel, with Alfredo Alvarez present, questioned J.A. about the incident for about one hour. Then Alfredo Alvarez waited in the office while Vice Principal Daniel questioned J.A. alone.

34. After questioning J.A. alone, Alfredo Alvarez and Vice Principal Daniel met again. Vice Principal Daniel informed Alfredo Alvarez that she had talked to R.'s parents and had viewed cameras and that she determined that the touching was mutual.

35. To his knowledge no law enforcement, child advocacy center, independent investigator or other outside agency interviewed the victim or perpetrator or reviewed the findings of CCISD's investigation.

36. Alfredo Alvarez disagreed with Vice Principal Daniel's determination that the sexual contact was mutual and informed her that he wanted to transfer J.A. for safety reasons. Before leaving the school Alfredo Alvarez completed a "safety transfer" and withdrew J.A. from school.

37. Alfredo Alvarez immediately began searching for another school for J.A. to attend. He began with the closest school to his residence which is Moody High School. Unfortunately he was advised that Moody High School didn't have enough available staff to meet J.A.'s needs.

38. Eventually, after missing approximately one month of school, Alfredo Alvarez enrolled J.A. in Richard King High School, a school located within the CCISD.

39. Further, on August 19, 2016 - approximately a year after the incident - Alfredo Alvarez received an investigation report regarding the findings of an investigation that the school had conducted.

40. Mr. Alvarez was extremely shocked as he was never informed the school was investigating the incident and further believes that the investigation was not properly conducted.

41. Moreover, the "investigation report" was simply a letter stating that an investigation had been conducted and had found that the incident to be an inappropriate sexual act between the two students.

42. Since the incident J.A. has demonstrated high levels of anxiety, depression and a fear of going to school. No assessments or evaluations have been initiated by the CCISD to address his needs to the sexual assault and harassment he experienced.

### VII. CLAIMS PURSUANT TO THE REHABILITATION ACT OF 1973

43. Plaintiffs incorporate by reference all the above-related paragraphs with the same force

and effect as if herein set forth.

44. The Corpus Christi ISD receives federal and thus follows the requisites of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794.

45. The implementing regulations of section 504 requires that each state that receives that receives disbursements, including the state's political subdivisions such as local school districts, must ensure that all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled student's unique and individualized needs, and fails to accommodate that child's disability, and keep the student safe, it violates Section 504.

46. Plaintiffs assert that because the Defendant School District has failed to provide him a safe and non-hostile educational environment, such failures as noted above, have together and separately, contributed to violating his rights pursuant to Section 504, and the federal rules and regulations promulgated pursuant thereto. As such J.A. has a private cause of action for the violation of Section 504 regulations.

47. In a similar vein, and likewise in addition and in the alternative, the failures denoted herein by the School District professionals was a gross deviation from professional standards of care.

48. Moreover, J.A. was a victim of discrimination based upon his disabilities by the School District.

### VIII.  CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT

49. Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

50. The facts as previously described demonstrate violations of the Americans with

Disabilities Act, 42 U.S.C. §12131, et seq.

51. Due to his status as a special education student, J.A. was also a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2) with his disability affecting his major life activities, as noted above.

52. The CCISD is deemed a "public entity" as defined in 42 U.S.C. §12131(1) and the School District receives federal financial assistance so as to be covered by the mandate of the ADA.

53. The CCISD provides a facility whose operation constitutes a program and services for ADA purposes.

54. The CCISD refused to reasonably accommodate J.A.'s disabilities and modify their services in violation of Title II of the ADA by not having a safe and non-hostile educational environment.

55. J.A. was a victim of discrimination based upon disability by the acts and omissions of CCISD.

56. J.A. experienced injuries thereby

57. J.A has a private cause of action against the School District for their failure to follow the relevant regulations promulgated pursuant to the ADA.

## IX. CLAIMS FOR RELIEF PURSUANT TO TITLE IX

58. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

59. Title IX of the Educational Act of 1972 specifically notes the standards of liability for a public entity in regard to the Title IX claim. The claimant must be a member of a protected class; must be bullied, harassed or assaulted based upon membership in that class; the School District must be on notice as to the allegations; be deliberately

indifferent to those allegations and the victim must have experienced a deprivation of educational opportunities damages. J.A. easily satisfies all those threshold requirements.

60. Plaintiffs further contend that these failures of the School District to have effective policies, procedures, practices and customs in place to assure J.A. was not a victim of bullying, harassment, or assault based upon gender, or based upon stereotypes based upon gender, and due to such failures violated his rights pursuant to Title IX of the Education Amendments of 1972, 86 Stat. 373, as amended, 20 U.S.C. section 1681 *et seq.*, upon which he now seeks recovery.

61. J.A has a private cause of action against the School District for their failure to follow the relevant regulations promulgated pursuant to the Title IX.

62. The School District was deliberately indifferent to the rights of J.A.

63. J.A. experienced injuries thereby.

## X. RATIFICATION

64. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

65. The CCISD ratified the acts, omissions and customs of School District personnel and staff.

66. As a result, the CCISD is responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of J.A.

## XI. PROXIMATE CAUSE

67. Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

68. Each and every, all and singular of the foregoing acts and omissions, on the part of the School District, taken separately and/or collectively, jointly and severally, constitute a

direct and proximate cause of the injuries and damages set forth herein.

## XII. DAMAGES

69. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

70. As a direct and proximate result of the School District's, J.A. has suffered injuries and damages, for which he is entitled to recover herein including, but not limited to:

   a. Loss of educational opportunities;

   b. Physical pain in the past;

   c. Mental anguish in the past;

   d. Mental anguish in the future;

   e. Physical impairment in the past, and

   f. Various out-of-pocket expenses incurred by his family but for the acts and omissions of the School District.

## XIII. PREVAILING PARTY STATUS

71. Plaintiffs incorporate by reference all the above-related paragraphs, as if fully set forth herein.

72. It was necessary for Plaintiffs to retain the undersigned attorneys to file this lawsuit. Upon judgement, Plaintiffs are entitled to be declared prevailing parties, pursuant to 20 U.S.C. §1415 (i)(3)(B).

## XIV. EQUITABLE RELIEF

73. Plaintiffs respectfully requests that the Court order the Defendant School District to:

   a. Contract with a third-party, such as the Anti-Defamation League or the Southern Poverty Law Center, to review the policies and procedures of the District who will then make recommendations to the School Board as to changes that need to

    be made;

b. Adopt policies, procedures, and practices commensurate with the Dear Colleague Letter, dated October 26, 2010, from the United States Department of Education Office for Civil Rights;

c. That for the next three years the District provide for a school-safety coordinator for each Campus, so as to assure that the program is enacted comprehensively;

d. That the District retain a neutral third party to complete a bullying assessment for each campus and have that person or entity report back to the President of the School Board and Superintendent so the District may address any issues noted in the assessment;

e. That staff receive "Diversity training" by a third party to include information about race, nationality, gender and disability stereotypes;

f. That the School District assures all staff are retrained in regard to Title IX, Section 504, and the ADA;

g. That the school provide a marker in the school library, where books and other materials would be made available to students dealing with bullying, harassment, and related emotional concerns and issues related to gender, race, and disability along with common stereotypes that accompany those subjects;

h. That Anti-bullying month be recognized by the Corpus Christi ISD;

i. That the school district help facilitate the provision of counseling services for students deemed to be at risk;

j. That the School Board appoint a committee including interested members of the public to address the issues noted herein, report back to the Board and act accordingly; and

    k.  For any other relief the Court may see fit to prescribe.

## XV. ATTORNEY FEES

74. Plaintiffs respectfully requests that the Court order the Defendant School District to:

75. Plaintiffs incorporate by reference all the above related paragraphs, as if fully set forth herein.

76. It was necessary for Plaintiffs to retain the undersigned attorneys to file this lawsuit.

77. Upon judgment, Plaintiffs are entitled to an award of attorney fees and expert(s) fees and costs pursuant to 504, ADA and Title IX and pursuant to 42 U.S.C. §2000d et seq.

## XVII. DEMAND FOR A JURY TRIAL

78. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all issues in this matter.

## XVIII. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays in the manner and particulars noted above, and in an amount sufficient to fully compensate him for the elements of damages enumerated above, and enter a judgment including but not limited to the following relief:

    a.  A Judgement in favor of Plaintiffs that Defendant violated the requisites of Section 504 by the failure to accommodate the Student's disabilities;

    b.  A Judgement in favor of Plaintiffs that Defendant violated the requisites of the Americans with Disabilities Act;

    c.  A Judgment in favor of Plaintiffs that Defendant violated the requisites of the Title IX of the Education Amendments of 1972;

    d.  An order declaring Plaintiff as prevailing party so that Defendant would be required to pay or reimburse Plaintiff for all costs of these proceedings, including,

but not limited to, filing fees, costs of representation, advocate fees, expert fees, and attorney fees for the preparation and trial of this cause of action, and for its appeal if required, pursuant to ADA, 504, Title IX and 42 U.S.C. § 2000d et seq., together with pre- and post-judgment interest, up to and through hearing and appeal;

e. The equitable relief requested above; and

f. Such other and further relief as this Court may deem just and proper in law or in equity.

Respectfully submitted,

/s/ *Martin Cirkiel*
Martin J. Cirkiel
SBN 00783829
Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com [Email]

Timothy D. Raub
SBN 00789570
Raub Law Firm, P.C.
814 Leopard Street
Corpus Christi, TX 78401
(361) 880-8181 [Telephone]
(361) 887-6521 [Facsimile]
timraub@raublawfirm.com [Email]

**ATTORNEYS FOR PLAINTIFFS**