UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| J. A.; bnf ALFREDO ALVAREZ, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:17-CV-182 |
| | § | |
| CORPUS CHRISTI ISD, | § | |
| | § | |
| Defendant. | § | |

## ORDER ON MOTION TO DISMISS

Plaintiff, J.A. (by his next friend A.A.) brings this action against Defendant Corpus Christi Independent School District (CCISD) for damages and equitable relief pursuant to: (a) Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794; (b) Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, et seq.; and Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. 1681, et seq. D.E. 22. Before the Court is CCISD's Motion to Dismiss Plaintiff's Second Amended Complaint (D.E. 23), in which it claims that all causes of action should be dismissed for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). Also before the Court are J.A.'s response (D.E. 29) and CCISD's reply (D.E. 31). For the reasons set out below, the motion (D.E. 23) is DENIED.

## STANDARD OF REVIEW

The test of pleadings under Rule 12(b)(6) is devised to balance a party's right to redress against the interests of all parties and the court in minimizing expenditure of time,

money, and resources devoted to meritless claims. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Furthermore, "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). The requirement that the pleader show that he is entitled to relief requires "more than labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Factual allegations are required, sufficient to raise the entitlement to relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. Those factual allegations must then be taken as true, even if doubtful. *Id*. In other words, the pleader must make allegations that take the claim from conclusory to factual and beyond possible to plausible. *Id*. at 557. The *Twombly* Court stated, "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

The Supreme Court, elaborating on *Twombly*, stated, "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In dismissing the claim in *Iqbal*, the Court stated, "It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id*. at 681.

In a Federal Rule of Civil Procedure 12(b)(6) context, the court construes the facts alleged in the complaint as true. The court may also consider: (a) documents attached to the complaint or identified as central to the claims made therein; (b) documents attached to the motion to dismiss that are referenced in the complaint; and (c) documents that are subject to judicial notice as public record. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

## FACTS

According to the Second Amended Complaint (D.E. 22), J.A. was born in 2000 and has been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD), a learning disability, and Fetal Alcohol Syndrome. He also has cognitive deficits formerly known as retardation. As a result, in his late teens, he functions on a first or second grade level and he receives special education services through CCISD for his intellectual disabilities.

In 2013, J.A. was enrolled in CCISD's South Park Middle School and placed in a Life Skills class, along with another student, "R." That year, R. allegedly sexually assaulted J.A. in the school restroom when the teacher left them unattended. The incident was reported to J.A.'s parent by an unidentified special education teacher who discovered J.A. crying in the restroom. South Park's assistant principal assured J.A. that the school would take steps to protect J.A. from R., thereby assuring J.A.'s safety at school. However, no formal investigation was undertaken and no formal safety plan was devised.

In 2015, J.A. was enrolled in CCISD's Mary Carroll High School. At the beginning of the school year, J.A.'s parent noticed that J.A. had suffered a bruise. J.A. was reluctant to discuss the matter with his parent, but he did reveal to his aunt that he was being bullied. A week later, R. allegedly sexually assaulted J.A. after pushing him into a restroom stall. J.A.'s parent learned of the incident from J.A. while taking J.A. to an unrelated doctor's appointment.

Again, the matter was reported to the school. A vice principal discussed the matter with J.A. and his parent (each alone and together), viewed cameras, and concluded that the contact was mutual. In order to protect J.A. from R., his parent requested and received a safety transfer that allowed him, approximately one month later, to enroll J.A. at CCISD's Richard King High School, where he was attending at the time he filed this action.

A year later, J.A. received a letter stating that an investigation had been conducted pursuant to CCISD Policy FFH (Local), entitled "Student Welfare: Freedom from Discrimination, Harassment and Retaliation." J.A.'s parent had not been advised of any additional investigation taking place and neither he nor J.A. had been interviewed anew. Despite the requirements of Policy FFH, the incident was not timely reported to any Title IX or Section 504 coordinator and no corrective action was taken.

According to his parent, J.A. has suffered emotionally since the first assault. He has become withdrawn and is uncomfortable discussing bullying, harassment, or assault issues. He exhibits high levels of anxiety, depression, and fear of school. His self-help skills have diminished and his sleep has been disturbed. Furthermore, he has become

nervous about restrooms to the point of urinating on himself and requiring a change of clothes.

## DISCUSSION

**A. The Discrimination Claims Were Not Released and**
**Are Not Subject to Exhaustion of Administrative Remedies.**

After reviewing the pleading and the parties' briefing, it is apparent that there is not only a question about whether sufficient facts are alleged to support the Section 504, ADA, and Title IX claims J.A. has expressly declared. There is also some confusion regarding whether J.A. is asserting claims that he has previously released or which are subject to exhaustion of administrative remedies. Thus the Court first sorts through the pleading to determine whether there is overlap that prevents this Court from adjudicating J.A.'s claims.

In the Texas Education Agency (TEA), J.A. filed a proceeding against CCISD pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(l). D.E. 25, p. 98. Both parties state that the TEA matter resulted in a Settlement, Compromise and Release Agreement,[1] which limits the claims that can be brought in this Court. D.E. 23, ¶ 1; D.E. 29, ¶¶ 12, 29-31. In particular, J.A. agreed to dismiss the TEA proceedings with prejudice against the filing of any claim under the IDEA. D.E. 8, ¶ 2.

The agreement's language releases all claims or causes of action for a Free Appropriate Public Education (FAPE) arising under constitutional, administrative,

---

[1] CCISD filed the Settlement, Compromise and Release Agreement of record with this Court. D.E. 8. Thereafter, J.A. filed the entire record of the TEA proceeding with this Court, including the settlement agreement. D.E. 25. The Court accepts, as stipulated, the terms of the Settlement, Compromise and Release Agreement that resolved the TEA matter.

common, or statutory law, specifically including the IDEA, section 89.1150 of the Texas Administrative Code (TAC), Section 504, the ADA, and the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g(b)(6). *Id.*, ¶ 3. J.A. acknowledged this in his pleading in this Court, which recites: "Plaintiffs make no claims related to the Student's right to a Free Appropriate Public Education ("FAPE") or any claims that [th]ere was a Gross Mismanagement of the Students [sic] Educational Plan, whether it be under IDEA, Section 504 or the ADA." D.E. 22, ¶ 11.

Comparing the terms of the legal provisions referenced in the release to the allegations in the complaint, the Court STRIKES as superfluous and disregards any stray allegations implicating conflict with the TEA proceeding. In particular, the IDEA guarantees the right to a FAPE. 20 U.S.C. § 1401. The matters included in a FAPE involve the development of an individualized education program (IEP), using tools to evaluate or assess the student's academic, functional, and behavioral status. 20 U.S.C. § 1414. There are also provisions that guarantee due process in enforcing rights to a FAPE that include dispute resolution procedures and notice of rights related to those procedures. 20 U.S.C. § 1415. The TAC provision expands on those IDEA provisions. 19 Tex. Admin. Code § 89.1150. Consequently, J.A.'s allegations related to a failure to assess his condition, a failure to include remedial measures in his IEP, and any failure to give notice of, or provide, adequate dispute resolution proceedings to advance J.A.'s rights are immaterial to the surviving claims and are disregarded as superfluous.

J.A.'s claim for monetary damages appears to relate to the emotional distress J.A. has suffered as a result of the abuse and discrimination. A claim for tort-based damages

may proceed in this Court because administrative exhaustion would be futile. However, to the extent that J.A. seeks instead to recover damages measured by remedies that are available under IDEA, CCISD may present an appropriate motion for the Court's consideration once the evidence supporting the damages claim is available. *See generally, Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 690 (W.D. Tex. 2015) (where damages are offered only as a substitute for IDEA relief associated with the student's IEP and FAPE, the claim is subject to exhaustion). The fact that J.A. may have pled, in part, a measure of damages to which he is not entitled does not prevent him from proceeding on his claims to the extent that other damage claims supported by the pleading are appropriate.

Specifically excluded from the release and presented for adjudication here are "claims related to discrimination based upon disability pursuant to Section 504 or the ADA, or based up on [sic] gender under Title IX." D.E. 8, ¶ 3 (last sentence). Under the standard of review to construe allegations in plaintiff's favor and disregarding the released issues related to the provision of a FAPE, the Court reads J.A.'s Second Amended Complaint to state the following facts that are material to his discrimination claim:

- When J.A. was in middle school, CCISD failed to ensure that he had constant supervision and that only one student went to the restroom at a time;

- In middle school, R. was physically and sexually abusive toward J.A.;

- CCISD knew that R. posed a safety threat to J.A. because of J.A.'s mental, emotional, and/or physical disabilities and their placement in the same special education program;

- CCISD imposed safety measures to protect J.A. from R. in middle school;

- When J.A. moved to high school within the same district, CCISD did not ensure communication to new school personnel that J.A. had a known disability-based vulnerability, along with sex-based abusive history with R. and required measures to protect him from R.;

- CCISD did not have policies or procedures in effect that were sufficient to ensure seamless protection of J.A., a student with disabilities, from the known disability- and sex-related safety risk posed by R.;

- When faced with R.'s repeated or resumed safety threats to J.A., CCISD refused to institute safety measures, denying that J.A. was exposed to any danger because he was deemed to have entered into the abusive conduct mutually.

- CCISD knowingly treated a student functioning on a first or second grade level as having the maturity to consent to, or protect himself from, the violent, sexual predation of a peer.

J.A.'s parent did insist on an intra-district transfer to separate J.A. from R. and CCISD acquiesced in that remedy. However, that does not necessarily eliminate J.A.'s claim for any physical, mental, or emotional injuries he suffered due to the lack of protection afforded to him on account of his disability or his sex prior to the intra-district transfer.

Consequently, J.A. has alleged his claims for discrimination under the following legal theories:

- Claims Pursuant to Section 504:

  o Failure and refusal to provide J.A. with a safe and non-hostile educational environment. D.E. 22, ¶¶ 65-66.

- o Discrimination based on disabilities by refusal to provide services otherwise provided to his non-disabled peers. *Id.*, ¶ 68.

- Claims Under the ADA:

  - o Refusal to reasonably accommodate J.A.'s disabilities and modify services by not having a safe and non-hostile educational environment. *Id.*, ¶ 74.

  - o Failure to follow the relevant regulations promulgated pursuant to the ADA. *Id.*, ¶ 77.

- Claims Pursuant to Title IX:

  - o J.A. was bullied, harassed, or assaulted based on his sex; CCISD was on notice of the conduct and was deliberately indifferent to the allegations such that J.A. experienced a deprivation of educational opportunities in violation of Title IX. *Id.*, ¶ 79.

  - o CCISD failed to have in place effective policies, procedures, practices, and customs to avoid gender bullying, harassment, or assault in violation of Title IX. *Id.*, ¶ 80.

  - o CCISD failed to follow Title IX regulations requiring the establishment of policies, procedures, practices, and customs to avoid gender bullying, harassment, or assault. *Id.*, ¶ 81.

These claims are all related to allegations of physical, intellectual, or emotional injuries in that R. made inappropriate physical contact with J.A., J.A. developed a fear of school, and J.A. regressed in his life skills, including his ability to participate in school, relate to others, sleep, and tend to his own bathroom needs. These injury allegations are tort-based money damages allegations.

CCISD argues that J.A.'s claims are not properly before the Court in that they seek relief that is also available under the IDEA and must be administratively exhausted. The statute reads:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, [T]itle V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, ***except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter***, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l) (emphasis added).

The scope of § 1415(l)'s extended exhaustion requirement has been held insufficient to apply to certain damage claims.

> However, "[t]he IDEA should not be construed so broadly that any injury a disabled student suffers in school is automatically subject to the IDEA." Therefore, when a plaintiff "does not allege deprivation of certain educational services," "does [not] seek remedies that are educational in nature," or alleges a "pure discrimination claim" or "non-education injuries" that cannot "be redressed by the IDEA's administrative procedures and remedies," the IDEA exhaustion requirement does not apply.

*Ripple*, 99 F. Supp. 3d at 686 (citations omitted).

"A complaint seeking redress for those other harms, independent of any FAPE denial, is not subject to § 1415(l )'s exhaustion rule because, once again, the only 'relief' the IDEA makes 'available' is relief for the denial of a FAPE." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 754–55 & n.8 (2017) (addressing damages for emotional harms). Because administrative exhaustion would be futile with respect to J.A.'s claims for tort-based damages, it is not a prerequisite to bringing these claims in this Court. The Court

DENIES the motion to the extent that it seeks dismissal for failure to exhaust administrative remedies under the IDEA.

Having outlined the claims, the Court proceeds with its determination of whether, together with the factual allegations on which they are based, they state claims upon which relief may be granted.

**B. Section 504/ADA**

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .
>
> Section 504, 29 U.S.C. § 794.

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.
>
> ADA, 42 U.S.C. § 12132.

The Fifth Circuit has repeatedly held that claims under Section 504 and the ADA for discrimination against disabled persons are subject to simultaneous consideration.

> The language in the ADA generally tracks the language set forth in [Section 504]. In fact, the ADA expressly provides that "[t]he remedies, procedures and rights" available under [Section 504] are also accessible under the ADA. 42 U.S.C. § 12133 (1995). Thus, "[j]urisprudence interpreting either section is applicable to both."

*Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002). "Because this court has equated liability standards under § 504 and the ADA, we evaluate [plaintiff's] claims under the statutes together." *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010). Therefore, the Court addresses them jointly, as did the parties. CCISD challenges these claims on the basis that: (1) they do not state a claim for intentional discrimination; and (2) they fail to allege that any discrimination suffered by J.A. was because of his disability rather than his sex.

**Intentional Discrimination**. While it appears that the Fifth Circuit has not formally announced a test for finding intentional discrimination under the ADA and Section 504, it has rejected a requirement of deliberate indifference and has not adopted any factor requiring ill will. *Borum v. Swisher Cty.*, No. 2:14-CV-127-J, 2014 WL 4814541, at *9 (N.D. Tex. Sept. 29, 2014) (citing *Delano-Pyle*, 302 F.3d at 575).[2] Rather, when a party knows that it is subject to ADA and Section 504 requirements, the Fifth Circuit has treated the failure to comply with those statutory obligations to make reasonable accommodations for the needs of disabled persons as intentional discrimination on account of disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004).

Thus we review the allegations outlined above to discern whether J.A. has stated sufficient facts upon which a reasonable jury could infer intentional discrimination by

---

[2] While the Fifth Circuit rejected the deliberate indifference standard in *Delano-Pyle*, it later applied that standard when the parties agreed that it governed the case. *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 995-1000 (5th Cir. 2014) (on summary judgment). Because the court was clear in its reliance on the parties' agreement as to the standard and because the court cited other cases that applied deliberate indifference on the basis of the parties' agreement, this Court does not take *Lance* to mean that the deliberate indifference standard applies when the parties do not agree.

CCISD's failure to make reasonable accommodations. *See McCollum v. Livingston*, No. 4:14-CV-3253, 2017 WL 608665, at *39 (S.D. Tex. Feb. 3, 2017) (intent may be inferred from noncompliant actions). CCISD was aware of the threat R. posed to J.A. because it had been reported and addressed when he was in middle school. CCISD knew that R.'s efforts to hurt J.A. were repeated and would not stop without intervention. CCISD knew that, despite his chronological age, J.A. functioned on a first or second grade level. CCISD further knew that J.A. was exposed to R. because they were both placed in the same special education program.

While CCISD had taken some measures to protect J.A. from R. during his middle school years, it failed to either communicate the need for protection or appropriate methods for protection when J.A. started high school. This occurred despite a continuation of special education services that should have put CCISD on notice of J.A.'s ongoing disabilities and associated vulnerabilities as well as R.'s threat to J.A. CCISD did not have sufficient policies and procedures in place to protect J.A. from R.'s known sexually predatory acts associated, at least in part, with J.A.'s disability-related vulnerability. This impaired J.A.'s ability to participate in CCISD's educational program by creating in him a fear of school and of restrooms.

**Disability Discrimination**. J.A. did allegedly suffer discrimination because of sex in that he was not protected from R.'s sexual assault. However, J.A. also alleges discrimination on the basis of disability. As a preliminary matter, J.A. contends that CCISD discriminated against him by failing to provide accommodations for his disability that are designed to prevent the abuse he suffered. In particular, he claims that he was

denied constant supervision and enforcement of the rule that only one student at a time could use the restroom. D.E. 29, ¶ 56.

Also, according to his parent, J.A. did not want R.'s sexual advances, resisted them and was bullied, and suffered serious emotional regression as a result—with objective evidence of bruises and loss of self-care restroom training. Yet CCISD, after interviewing J.A., concluded that J.A.'s participation in the sexual encounter was mutual. CCISD came to this conclusion despite the parent's interpretation and communication of his own son's statements and behavior.

R. had access to J.A. because of the disability program they were both in. It can be inferred that R. chose to, and was able to, harass J.A. with conduct manifesting in sexual acts because J.A.'s disability prevented him from articulating the danger he confronted, seeking intervention, defending against it, and standing up for himself afterward. According to the pleadings and inferences to which J.A. is entitled, he was harassed because of his disability. And despite knowledge of that disability, CCISD failed to take action necessary to protect him. The allegations further support an inference that CCISD used J.A.'s disability to minimize the threat and refuse to take action.

Disability discrimination can be evidenced by a failure or refusal to properly communicate with an individual because of his disability. For instance, in *Delano-Pyle*, a finding of disability discrimination was affirmed on evidence that a law enforcement officer only tried to communicate with the plaintiff orally, despite knowing that the plaintiff was deaf and having trouble understanding. *Delano-Pyle*, 302 F.3d at 575. It

can be inferred from the allegations that CCISD's representative knew of J.A.'s serious cognitive limitations, yet separated him from his parent and elicited a false admission in order to justify CCISD taking no action to remedy a reported problem. Under such circumstances, J.A. has stated a claim for discrimination on the basis of his disability, not just on the basis of sex.

The Court DENIES the motion to dismiss the ADA and Section 504 claims. J.A. adequately alleged intentional discrimination by refusal to accommodate his disability-based needs. This decision is based on a standard of review that permits construction of allegations and inferences in J.A.'s favor. It allows this case to proceed with discovery. If the evidence on summary judgment or trial does not bear out these allegations and inferences, a different result may obtain.

### C. Title IX

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .
>
> 20 U.S.C.A. § 1681 (West)

A Title IX claim for sex discrimination or sexual harassment for peer-on-peer conduct requires allegations of "deliberate indifference to known acts of harassment in [the defendant's] programs or activities. Moreover, . . . such an action will lie only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis a/n/f L.D. v. Monroe*

*Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999); *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

**Regulation-Based Liability**. CCISD first challenges J.A.'s Title IX allegations to the extent that they are based on a failure to follow practices and procedures promulgated by the Department of Education. *See* D.E. 22, ¶ 81. According to CCISD, the Supreme Court in *Gebser* eliminated a plaintiff's ability to rely on such regulations when asserting an implied private right of action for money damages under Title IX. The Court agrees. "[The school district's] alleged failure to comply with the regulations . . . does not establish the requisite actual notice and deliberate indifference. . . . We have never held . . . that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements." *Gebser,* 524 U.S. at 291–92. The regulation-based claim is STRICKEN.

**Severe and Pervasive**. According to the Supreme Court, a private action under Title IX for money damages "will lie only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633. CCISD claims that R.'s conduct or J.A.'s loss of educational opportunities are insufficient triggers for Title IX liability.

This is not a case involving teasing or name-calling. Neither is it about bullying or any conduct that could arguably be interpreted as a regular run-of-the-mill case of children interacting in a manner that would be unacceptable among adults. *Davis*, 526 U.S. at 651. The allegations state that R. sexually assaulted J.A. According to the amended petition, when it occurred in middle school, CCISD personnel found a way to

protect J.A. and end the abuse. However, when it recurred in high school, the vice principal allegedly engaged in an inadequate investigation, resulting in a decision to take no action at all. In essence, CCISD put the blame on J.A., the victim, and refused to protect him. As a consequence, J.A. missed a month of school while his parent sought an alternative solution. As a result of the abuse, J.A. developed a fear of school and regressed in his life skills, thus losing an equal opportunity to benefit from CCISD's education.

Sexual assault is conduct that can constitute a criminal offense. Tex. Penal Code § 22.011. As such, it is objectively offensive. R.'s conduct, including physical aggression and sexual contact toward J.A., occurred on several occasions over a period of years and involved school facilities (particularly restrooms, access to which is essential). Thus it can be characterized as pervasive. The Court refuses to find that, as a matter of law, R.'s conduct toward J.A. was not severe; it involved physical domination or violence. Therefore, the conduct was severe, pervasive, and objectively offensive as those qualities present necessary predicates for a Title IX peer-harassment claim.

**Deliberate Indifference**. Last, the Court considers CCISD's challenge to the deliberate indifference requirement. CCISD begins with the argument, "The Supreme Court made clear in *Davis* that Title IX does not require funding recipients to remedy peer harassment." D.E. 23, p. 15 (citing *Davis*, 526 U.S. at 648). That was not the *Davis* holding. Instead, the *Davis* Court found that deliberate indifference was actionable in instances of peer conduct but that it did not depend on a failure to apply specific remedies to the harassment. "We stress that our conclusion here—that recipients may be liable for

their deliberate indifference to known acts of peer sexual harassment—does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." *Id*.

Deliberate indifference must be based on the Title IX grant recipient's actual knowledge of the sexual harassment and its official decision not to remedy it. *Id*. at 642. "[R]ecipients of federal funding may be liable for 'subject[ing]' their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority." *Id*. at 646–47. Stated differently, "School administrators will continue to enjoy the flexibility they require so long as funding recipients are deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id*. at 648.

Here, when the harassment began in middle school, complaints were made and a solution was found that ended the abuse. There are no allegations that the response at that time was insufficient or unreasonable. This does not mean, however, that the past conduct was irrelevant when it recurred. With respect to the second scenario, there appears to have been a single report brought to the attention of a school administration official. Despite the nature of R.'s conduct, its recurrence over a period of years, its use of CCISD facilities and school hours, and CCISD's control over R. (who was a CCISD student at the time), CCISD chose to take no action to protect J.A.

**Comparative Cases**.  CCISD cites three cases for the proposition that J.A.'s claim is insufficient to trigger Title IX liability.  However, those cases are easily distinguishable.  In *Watkins v. La Marque Independent School District*, 308 F. App'x 781, 783 (5th Cir. 2009) (per curiam), the harassing conduct involved a single incident that took place when the teacher stepped out of the classroom.  Another student exposed himself, grabbed and kissed the plaintiff, and lifted her skirt.  The school responded by separating the students on different floors of the school and assigning an escort to the plaintiff to accompany her during class changes.  Later, when the plaintiff was being escorted to her bus at the end of the day, the offending student yelled profanities at her.  At that point, the offender was assigned to a different campus.  The response was reasonable and effective.  The trial court granted summary judgment dismissing the Title IX claim and the Fifth Circuit affirmed.

Another case involved a kindergarten student who exposed himself, reached in the pants of other students, jumped on the plaintiff at recess, and repeatedly wanted to do "nasty stuff" with her.  *Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 821 (7th Cir. 2003).  That case, too, was before the trial court on a summary judgment motion.  There was abundant evidence that the teacher, counselor, and other school personnel took various actions to separate the offending student within the classroom, explain to him that the conduct was not acceptable, separate the offender from the classroom, and separate his class from the other classes at lunch and recess.  Despite all of their efforts, the student continued to harass the plaintiff until she asked for, and was immediately granted, a transfer to another school.  The trial court granted

summary judgment on the basis that the school's responses were reasonable and the Seventh Circuit affirmed.

Last, CCISD relies on *Wilson v. Beaumont Independent School District*, 144 F. Supp. 2d 690 (E.D. Tex. 2001). That case involved a single incident in which a male student sexually molested another male student. Again, it was presented to the trial court on summary judgment, with evidence that when school personnel began their investigation, the plaintiff told the assistant principal that there had been no sexual contact. Nevertheless, the assistant principal reported the incident to the principal and the teachers undertook to keep the students separated. The principal did not report the incident to the plaintiff's parents. They learned of it after the plaintiff confided in his sister (including the admission that there had been sexual contact), whereupon the plaintiff's mother notified authorities and made complaints to the school. After additional administrative investigations and attempted remedies, the offending student was assigned to another school and the plaintiff returned to his own school.

The trial court held that the single instance of bad conduct was insufficiently severe, pervasive, and objectively offensive to trigger Title IX liability. Moreover, the trial court found that the school district's response was not clearly unreasonable under the circumstances. Its initial response may have been mild, but the court attributed that to the denial of sexual conduct. Once actual sexual conduct was alleged, the school became fully engaged in investigations, reports, and remedies in order to effectively address the problem.

**Conclusion**.  These summary judgment cases are not persuasive here because they involve distinguishable fact scenarios and were adjudicated at summary judgment—not dismissed at the pleading stage.  Construing the pleadings in favor of J.A., he has stated a claim for deliberate indifference.  While CCISD will have an opportunity to demonstrate with evidence that the conduct between R. and J.A. was mutual, that is a fact question for the jury.  CCISD's inaction cost J.A. a month of his education due to the alleged necessity of his parent to intervene to protect J.A. by keeping him out of school and away from R.  J.A. has further regressed in his intellectual and emotional development.  Thus he has stated a claim under Title IX.

## CONCLUSION

For the reasons set out above, the Court DENIES CCISD's Rule 12(b)(6) motion to dismiss for failure to state a claim.  However, the Court STRIKES from the pleading all references to remedies that duplicate those available under IDEA and all claims based on a failure to comply with administrative regulations.  Such allegations are superfluous and are either released or not subject to this Court's jurisdiction due to failure to exhaust. J.A.'s remaining claims for tort-based damages pursuant to Section 504, the ADA, and Title IX may proceed.

ORDERED this 17th day of September, 2018.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE